KENNEDY, Justice
(dissenting).
Where is the prejudice here if the substitution of Bose and Bay were permitted to relate back? This Court has stated that relation-back will be denied where there is an “inordinate delay” in substitution and “the delay prejudice^] the defendant.” Wallace v. Doege, 484 So.2d 404, 406 (Ala. 1986) (stating that “relation-back ... will not be applied where there has been an inordinate delay ..., if the delay prejudiced the defendant”); Peek v. Merit Machinery Co., 456 So.2d 1086 (Ala.1984) (stating that the defendant had failed to establish prejudice and, therefore, refusing to deny relation-back). Even in cases where the delay was for a period of years we have still required a showing of prejudice. See, e.g., Denney v. Serio, 446 So.2d 7 (Ala.1984) (where a fictitious party was named in a 1980 complaint and substitution was not sought until 1982, after the statutory period of limitations had run, the Court permitted relation-back because the defendant failed to show prejudice). There has been no showing of prejudice in this case, nor, in fact, does the majority mention prejudice in its opinion, although the plaintiff has properly raised it as an issue.
I respectfully submit that this alone represents a gross and fatal flaw in the analysis of the majority. However, I also disagree with the majority’s conclusion that there was an inordinate delay in substitution after learning the true identities of Bose and Bay. In fact, substitution closely followed the plaintiff’s full knowledge of the identity of Bose and Bay.
A pivotal assertion, relied on by the majority for its holding that there was an inordinate delay in substitution, is that “The plaintiff knew of Bay’s true identity before the statutory period of limitations *368 expired.” The majority states that the same is true as to Bose. This is incorrect.
The defendants do not dispute the following facts pertinent to this matter:
Months before the statutory period of limitations had run, the plaintiff directed to Thomas Hospital and Dr. McBrearty the interrogatories referred to by the majority. The responses of those two defendants were identical, and they included incomplete information relating to Bose and Bay. Specifically, the answers failed to identify the location of the Dr. Bose in question and, unknown to the plaintiff, failed to give a complete name for Bay by omitting its “P.A.” designation.
The latter may appear to be a minor omission, but this omission was complicated by counsel for Thomas Hospital, who, as I will discuss, then named Bay, in correspondence to the plaintiff, by yet another incorrect name.[2]
After receiving the interrogatory answers referred to by the majority, counsel for the plaintiff telephoned counsel for Thomas Hospital (who became, also, counsel for Bay), to inquire as to where the Bay described in the interrogatory answers was located. Although Thomas Hospital had stated in interrogatories that it had a contract with Bay, its counsel asserted a total lack of knowledge of Bay’s address.
Counsel for Thomas Hospital followed up the plaintiffs inquiry with a letter to counsel for the plaintiff, stating therein:
“As I advised you, I do not know the address of Bay Emergency Physicians, P.C. who you intend to name as a party defendant in this case. To my knowledge, Dr. William Bose was working for Bay Emergency Physicians under a contract which that organization had with Thomas Hospital to provide emergency room services to the hospital.”
Note that now, Bay is denominated as “Bay Emergency Physicians, P.C.” (which is incorrect).
Counsel for the plaintiff responded by letter:
“You were unable to provide me with an address for either Dr. William Bose or Bay Emergency Physicians, P.C. We have checked with the Secretary of State, medical facilities around the bay area and other law firms. No one has been able to give me an address for service on either of these two entities. That is the reason I have not been able to amend the complaint. Can you help?”
Counsel for Thomas Hospital wrote back: “If you will send me a couple of interrogatories, perhaps you could obtain this information.”
The requested interrogatories were served, promptly thereafter, on January 30, 1991, over a month before the statutory limitations period was to run. Thomas Hospital did not timely respond. A timely response would have come within the limitations period. Thomas Hospital delayed in responding to these interrogatories until April 23,1991, more than a month after the limitations period had run.
When Thomas Hospital did finally respond, it did so with yet another name for Bay. Thomas Hospital stated that the Dr. Bose in question had been employed by Bay Medical Clinic, P.A., in Fairhope, Alabama (also, according to Bay Medical Clinic, P.A., incorrect).
In sum, before the statutory period of limitations had run, the plaintiff had not been able to correctly identify Bay. In fact, the plaintiff, even through considerable efforts, had not been able to obtain the full and correct name of Bay. Moreover, there is evidently more than one entity operating in the Mobile/Fairhope area with a name like Bay’s, e.g., Bay Medical Clinic, P.A.
Also, as to Bose, the plaintiff had been able to correctly identify only a name; the plaintiff was confronted with a morass of *369 conflicting information as to the employer of this person and, despite her attorney’s efforts, had no information as to where service on the correct Dr. Bose could be had.
In Threadgill v. Birmingham Bd. of Educ., 407 So.2d 129, 132 (Ala.1981), we stated that Rule 9(h) is “intended to operate principally in the area of emergency cases where neither the name nor the identity of the defendant is known.” Names can be identical and names can be misspelled or incorrectly stated, as this plaintiff will surely attest; more than a name must be learned before one can be reasonably certain that he or she has named the correct person as a defendant and in order to effectively bring that person into court.
Until after the statutory period had run, the plaintiff, despite considerable efforts, was largely left in the dark about Dr. William Bose, although before the period ran she had properly requested and had tacitly been promised additional information about Bose by counsel for Thomas. Similarly, there is no question that the plaintiff had not, until after the statute ran, been able to correctly identify Bay.
However, as the majority points out, one must “proceed in a reasonably diligent manner in determining the true identity of the defendant.” Kinard v. C.A. Kelly & Co., 468 So.2d 133, 135 (Ala.1985). Note that one is not required to proceed with “all diligence,” exhausting every means at his or her disposal, but with efforts that, objectively viewed, indicate that he or she proceeded with “reasonable diligence.”
Given the fact that the plaintiff did not ascertain the true identity of Bay and Bose until after the statutory period had run, the question becomes whether the plaintiff failed to use reasonable diligence in learning the true identities of these defendants. The majority indicates that it holds both that the identities were known before the limitations period ran and that if there was any lack of information relating to the identity of Bay and Bose before that time, it was because the plaintiff did not use reasonable diligence in seeking this information.
Here, I must make a critical point about the statement of counsel for Thomas Hospital made over a month before the limitations period ran. Recall that counsel for Thomas Hospital tacitly promised the plaintiff the information needed (“[i]f you will send me a couple of interrogatories”). Specifically, it bears emphasis that at that point, counsel for Thomas Hospital clearly suggested that he had access to the information needed but that he would not provide it informally; he indicated that if the plaintiff made a formal request through interrogatories then counsel for Thomas Hospital would provide the identifying information about Bay and Bose.[3]
This fact is important, because, at that point, the plaintiff had no reason to believe that further outside investigation was necessary; the information sought was available, as logically it should have been, through counsel for the very hospital that by its own admission had a contract with Bay, and in which, by its own admission, Bose had rendered care.
Yet, as regards Bay, the majority suggests that the plaintiff’s Birmingham counsel, rather than investigating the identity of Bay through discovery tools, should have been scouring, for example, Mobile telephone books or medical license records. Even assuming that any of the incomplete or erroneous names for Bay that the plaintiff had knowledge of would have rendered such a pursuit fruitful, this is an incorrect assessment. Reasonableness did not require the plaintiff to use methods outside *370 discovery after counsel for Thomas Hospital had clearly indicated that the information needed was within the easy reach of discovery and where the plaintiff engaged in efforts to obtain that information through discovery.[4]
In my view, the plaintiff did indeed act with reasonable diligence. The record indicates that before counsel for Thomas Hospital indicated that discovery would yield the information needed, the plaintiff had contacted the secretary of state’s office, medical offices around Mobile, and Mobile attorneys, had filed interrogatories and requests for production, and had sought this information by both telephone and written correspondence with counsel for Thomas Hospital.
HORNSBY, C.J., and INGRAM, J., concur.

. To further complicate matters, "ESES?" was listed on the decedent’s emergency room sheet after the notation, "Dr. Bose." The plaintiffs counsel states that he was also engaged in activities to determine whether ESES might relate to the true identity of the employer of the physician whose identity he also sought. The plaintiffs counsel states that he has subsequently learned that "ESES” stands for yet another entity, Eastern Shore Emergency Services.

-. This information had already been requested by a previous interrogatory as to Dr. Bose. Note, also, that counsel for Thomas Hospital had previously denied any knowledge of this information.
The Committee Comments to Ala.R.Civ.P. 33 cite several cases for the proposition that "where a party acquires information after he has answered an interrogatory which would change his answer, there is an obligation upon him to apprise the party who submitted the interrogatory of this additional information.”
Nevertheless, in an attempt to get the information, the plaintiff immediately complied with the request for additional interrogatories.

. In fact, it is evident that the reason the statute of limitations became an issue here was the fact that, in violation of our rules of procedure, counsel for Thomas Hospital (who also represents Bay) failed to timely respond to an interrogatory that would have yielded the information sought, and, further, delayed in responding until after the limitations period had run. The plaintiffs counsel made diligent efforts within the framework of our rules of procedure, but he was not receiving the required cooperation of opposing counsel. The majority permits Bay to enjoy an ill-gotten advantage.